IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCUS LARRY CLEWIS,

        Plaintiff,               No. CIV S-09-2120 JAM GGH P

     vs.

CALIFORNIA PRISON HEALTH
CARE SERVICES, et al.,           ORDER &

        Defendants.         FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

1983.  This matter proceeds on a second amended complaint, filed on July 12, 2011,[1] naming

four defendants, Mercy Folsom Hospital, Health Care Manager & Chief Medical Officer Dr. P.

Sahota, Dr. Jew and Reg. Nurse Rebecca Asp.  Defendants Sahota, Jew and Asp have answered

the second amended complaint.  Pending before the court are: 1) defendant Mercy Folsom

Hospital's[2] motion to dismiss, filed on January 3, 2012, to which plaintiff filed his opposition on

---

[1] The original complaint was filed on July 31, 2009.

[2]  The correct name of the entity, according to this defendant, is Mercy Hospital of
Folsom.  The Clerk of the Court will be directed to correct this defendant's name in the case
docket.

1

1  January 23, 2012, after which defendant Mercy Hospital filed a reply on January 26, 2012; 2)

2  defendant Mercy Hospital's  motion to strike, filed on January 3, 2012, to which plaintiff filed

3  his opposition on January 26, 2012, after which defendant Mercy Hospital filed a reply on

4  February 1, 2012.

5  Plaintiff's Allegations

6          Plaintiff alleges that defendant Mercy Hospital was a medical entity "under

7  contract by the California Department of Corrections and Rehabilitation [CDCR]."  Second

8  Amended Complaint (SAC), p. 3.  The gravamen of plaintiff's second amended complaint with

9  respect to defendant Mercy Hospital (hereafter, MH), is that after plaintiff suffered a broken left

10  arm on May 26, 2008, during a game of baseball at California State Prison-Sacramento (CSPS),

11  once plaintiff was transported to defendant MH, plaintiff received inadequate medical care in

12  violation of his Eighth Amendment rights.  Specifically, plaintiff alleges that as to defendant

13  MH, his arm was x-rayed and it was determined that he had suffered a total break of his left arm

14  radius [or radial] bone, but, nevertheless, defendant MH only provided plaintiff with an ice-pack

15  and some aspirin, informed plaintiff that it does not operate on prisoners and that he should have

16  been sent to the University of California, Davis Medical Center.  Plaintiff was sent back to CSPS

17  where he was returned to his cell without medical treatment for 24 hours.  Plaintiff seeks

18  compensatory and punitive damages "as provided by statute."  See Second Amended Complaint

19  (SAC), pp. 4, 6.

20  Motion to Dismiss

21          Defendant Hospital moves for dismissal contending that plaintiff's claim is 1)

22  time-barred, 2) fails to state a claim under 42 U.S.C. § 1983, and 3) fails to state an Eighth

23  Amendment claim.  See Notice of Motion & Motion to Dismiss (MTD).

24       *Legal Standard for Motion to Dismiss*.

25          In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

26  a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

2

1    it must contain factual allegations sufficient to "raise a right to relief above the speculative

2    level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

3    pleading must contain something more...than...a statement of facts that merely creates a suspicion

4    [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice

5    and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

6    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

7    556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

8    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

9    draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

10           In considering a motion to dismiss, the court must accept as true the allegations of

11   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

12   Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

13   motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

14   89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

15   that general allegations embrace those specific facts that are necessary to support the claim.'"

16   National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

17   (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

18   Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

19   Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

20           The court may consider facts established by exhibits attached to the complaint.

21   Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

22   consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

23   1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

24   papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

25   1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

26   Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

1          A pro se litigant is entitled to notice of the deficiencies in the complaint and an

2   opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

3   Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

4   *1)          Whether the Claim against Defendant Mercy Hospital of Folsom is Time-Barred*

5                      *Applicable Statute of Limitations*

6          "Actions brought pursuant to 42 U.S.C. § 1983 are governed by the state statutes

7   of limitations for personal injury actions."  Morales v. City of Los Angeles Wilson v. Garcia, 214

8   F.3d 1151, 1154 (9th Cir. 2000), citing Wilson v. Garcia, 471 U.S. 261, 275, 105 S.Ct. 1938 []

9   (1985); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir.1999), cert. denied, 529 U.S. 1117, 120 S.Ct.

10  1979, [] (2000).  In California, there is a two-year statute of limitations in § 1983 cases.  See Cal.

11  Code Civ. Proc.§ 335.1;  Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004); Jones v.

12  Blanas, 393 F.3d 918, 927 (9th Cir. 2004)("[f]or actions under 42 U.S.C. § 1983, courts apply the

13  forum state's statute of limitations for personal injury actions.").

14          "Federal courts also apply a forum state's law regarding tolling, including

15  equitable tolling when not inconsistent with federal law.  See Hardin v. Straub, 490 U.S. 536,

16  537-39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); Bacon v. City of Los Angeles, 843 F.2d 372,

17  374 (9th Cir.1988)."  Fink v. Shedler, 192 F.3d at 914; Jones v. Blanas, 393 F.3d 918, 927 (9th

18  Cir. 2004) (accord).  Pursuant to Cal. Code Civ. Proc. § 352.1(a), a prisoner serving a term of

19  less than life is entitled to the two-year tolling provision before the commencement of the statute

20  of limitations for bringing a civil rights action.  Fink v. Shedler, 192 F.3d 911 at 914.

21                      *Claim Accrual*

22          Notwithstanding, the application of the forum's state law regarding the statute of

23  limitations, including statutory and equitable tolling, in the context of a § 1983 action, it is

24  "federal law" which "governs when a claim accrues."  Fink v. Shedler, 192 F.3d at 914, citing

25  Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir.1994); Cabrera v. City of Huntington

26  Park, 159 F.3d 374, 379 (9th Cir. 1998) ("federal law governs when a cause of action accrues and

1  the statute of limitations begins to run in a § 1983 action."); TwoRivers v. Lewis, 174 F.3d 987,

2  991 (9th Cir. 1999) ("federal, not state, law determines when a civil rights claim accrues.").   "A

3  claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the

4  cause of action."  Fink , 192 F.3d at 914, citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.

5  1996); Johnson v. State of California, 207 F.3d 650, 653 (9th Cir. 2000) (accord), overruled on

6  other grounds, Johnson v. California, 543 U.S. 499, 125 S. Ct. 1141 (2005).

7  *Discussion*

8  Defendant MH contends that the applicable statute of limitations for plaintiff's

9  claim is set forth in Cal. Code Civ. Proc. § 340.5, which governs claims of professional

10  negligence [or medical malpractice]  against a health care provider and which states, in relevant

11  part:

12  In an action for injury or death against a health care provider based
upon such person's alleged professional negligence, the time for
13  the commencement of action shall be three years after the date of
injury or one year after the plaintiff discovers, or through the use of
14  reasonable diligence should have discovered, the injury, whichever
occurs first.

15

16  Citing the definition of professional negligence provided by Cal. Code Civ. Proc.

17  § 340.5, defendant argues that plaintiff's claim against MH comes within that statute (MTD, p.

18  4):

19  (2) "Professional negligence" means a negligent act or omission to
act by a health care provider in the rendering of professional
20  services, which act or omission is the proximate cause of a
personal injury or wrongful death, provided that such services are
21  within the scope of services for which the provider is licensed and
which are not within any restriction imposed by the licensing
22  agency or licensed hospital.

23  Defendant MH contends that "the crux" of plaintiff's claims against MH "concern the rendering

24  of professional services," and that "it was Mercy's failure to act with respect to providing

25  medical care that was the proximate cause of his injury."  MTD, p. 4.  Noting that plaintiff

26  alleges he was told, on May 26, 2008, that defendant MH "do[es] not operate on prisoners" and

1    that he was refused treatment on that day, defendant contends that May 26, 2008, was the date he

2    discovered his alleged injury within the meaning of Cal. Code Civ. Proc. § 340.5.  MTD, p. 4;

3    see, SAC, pp. 4, 6.  Defendant argues that plaintiff had until May 26, 2009, to file his claims

4    against MH, except that he is entitled to the two-year tolling provision of Cal. Code Civ. Proc. §

5    352.1 for prisoners.  MTD, p. 5, citing Belton v. Bowers Ambulance Service, 20 Cal.4th 928, 86

6    Cal. Rptr.2d 107 (1999) (holding that a prisoner's time to file a medical malpractice suit under

7    Cal. Code Civ. Proc. § 340.5 is extended by § 352.1 to three years).

8              Defendant MH requests judicial notice of plaintiff's original complaint, filed on

9    July 31, 2009, and of the first amended complaint, filed on January 26, 2010.

10             Under FRCP 12(b)(6), the Court may consider matters that are
               subject to judicial notice. *Mullis v. United States Bankruptcy*, 828
11             F.2d 1385, 1388 (9th Cir.1987). The Court may take judicial notice
               "of the records of state agencies and other undisputed matters of
12             public record" without transforming the motions to dismiss into
               motions for summary judgment. *Disabled Rights Action Comm. v.*
13             *Las Vegas Events, Inc*., 375 F.3d 861, 866 (9th Cir.2004).  The
               Court may also examine documents referred to in the complaint,
14             although not attached thereto, without transforming the motion to
               dismiss into a motion for summary judgment. See *Knievel v.*
15             *ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005).

16   Headwaters Construction Company v. National City Mortgage Co., 720 F. Supp.2d 1182, (D.

17   Idaho 2010).

18             "When ruling on a Rule 12(b)(6) motion to dismiss, if a district
               court considers evidence outside the pleadings, it must normally
19             convert the 12(b)(6) motion into a Rule 56 motion for summary
               judgment, and must give the nonmoving party an opportunity to
20             respond." *United States v. Ritchie*, F.3d 903, 907 (9th Cir.2003)
               (citations omitted).  However, the court may consider certain
21             materials without converting the motion to dismiss into a motion
               for summary judgment. *Id*. at 908 (citing *Van Buskirk v. CNN*, 284
22             F.3d 977, 980 (9th Cir.2000); *Barron v. Reich*, 13 F.3d 1370, 1377
               (9th Cir.1994)). Such materials include documents attached to the
23             complaint, documents incorporated by reference in the complaint,
               or matters of judicial notice. *Id.*

24

25   Lloyd v. Powell, 2010 WL 2560652 *1 (W.D. Wash. 2010).

26   \\\\\

1          In opposition to the motion to dismiss, plaintiff does not raise an objection to

2   defendant's judicial notice request.  Defendant's request for judicial notice of plaintiff's earlier

3   incarnations of the operative second amended complaint is granted.   Defendant MH observes

4   that neither in the original or first amended complaint does plaintiff name MH as a defendant,

5   and his second amended complaint, naming MH as a defendant for the first time, was filed on

6   July 12, 2011.  Thus, under the two-year tolling provision, according to defendant MH, plaintiff

7   must have filed his claims against MH by May 26, 2011.  MTD, p. 5.  Citing Merritt v. County of

8   Los Angeles, 875 F.2d 765, 768 (9th Cir. 1989), defendant contends that it is the relation back

9   doctrine of state, rather than federal, law that governs civil rights action under 42 U.S.C. § 1983,

10  and that under Cal. Code Civ. Proc. § 474, plaintiff must name a "Doe" defendant if he does not

11  specifically name a defendant in an original complaint for claims against a newly named

12  defendant to relate back.  Id.

13          Plaintiff counters that his claims against defendant MH are §1983 claims for a

14  violation of his Eighth Amendment rights, and as such, with the borrowed applicable two-year

15  statute of limitations under California law for personal injury actions (see above, Cal. Code Civ.

16  Proc. § 335.1) in such actions along with the two-year tolling provision to which he his entitled,

17  his claims against MH, which accrued on May 26, 2008, were timely when filed in the second

18  amended complaint on July 12, 2011, which was ten months prior to the expiration of the

19  applicable statute of limitations.  Opposition (Opp.), pp. 1-2. The court finds that plaintiff has

20  the better argument (assuming for the moment that MH is a state actor as that term is known in

21  §1983 actions). In its reply (p. 2), defendant MH faults plaintiff's reliance in his opposition (p.1)

22  on Owens v. Okure, 488 U.S. 235, 236, 109 S. Ct. 573, 574 (1989), which, in addressing the

23  question of what statute of limitations should apply in an action under § 1983 "where a State has

24  one or more statutes of limitations for certain enumerated intentional torts, and a residual statute

25  for all other personal injury actions," held that "the residual or general personal injury statute of

26  limitations applies."  Defendant distinguishes Owens by pointing out the Supreme Court was

7

1   addressing the question of the statutes for certain intentional torts, not a professional negligence

2   claims.  However, plaintiff's claim against defendant MH is not a supplemental state law claim

3   for medical malpractice but rather one for deliberate indifference to a serious medical condition

4   in violation of the Eighth Amendment under § 1983.  Defendant's alternative argument, that

5   plaintiff is not entitled to the tolling provision in this action under §1983 by the application of

6   Cal. Code Civ. Proc. § 352.1(c), requiring that plaintiff must have filed this action by no later

7   than May 26, 2009, which is set forth with no case authority, is even less apposite.[3]  The

8   undersigned finds that defendant MH's motion to dismiss on the ground that it is time-barred

9   should be denied.

10   *2)        Whether Plaintiff has Stated a Claim Under 42 U.S.C. § 1983*

11              The Civil Rights Act, 42 U.S.C. § 1983, under which this action was filed

12   provides as follows:

13   > Every person who, under color of [state law] . . . subjects, or causes
   > to be subjected, any citizen of the United States . . . to the

14   > deprivation of any rights, privileges, or immunities secured by the
   > Constitution . . . shall be liable to the party injured in an action at

15   > law, suit in equity, or other proper proceeding for redress.

16   Defendant MH argues that plaintiff's allegation that it was "under contract by the California

17   Department of Corrections and Rehabilitation" in the second amended complaint contradicts his

18   allegation in the original complaint that MH did not have a contract with the state and is an

19   insufficient conclusory allegation.  MTD, p. 7, citing p. 3 of the original complaint.  Although the

20   undersigned has granted defendant's request for judicial notice of the prior incarnations of the

21   operative complaint, defendant is reminded that Local Rule 220 requires that an amended

22   complaint be complete in itself without reference to any prior pleading because, as a general rule,

23   an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57

24   (9th Cir. 1967).  Moreover, permitting leave to amend can afford a party the opportunity to

25   _____

26        [3] See MTD, p.6, Reply, p. 3.

1   rectify a factual error so that the fact that plaintiff has changed the allegation regarding whether

2   there is or was a contractual relationship between defendant and the state is not enough to

3   repudiate the claim of such a link in the operative second amended complaint, although it might

4   arguably tend to undermine it (particularly since plaintiff reiterated in the first amended

5   complaint that there was no contract between defendant MH and the state).[4]

6           Defendant seeks to distinguish the facts of this case from those of West v. Atkins,

7   487 U.S. 42, 108 S. Ct. 2250 (1988), by noting that the contract at issue therein was between a

8   physician, not a hospital, and a state prison hospital; the physician treated the prisoner at the

9   prison, not a private, hospital; and the doctor treated the prisoner for several months versus only

10  once, as here.  MTD, pp. 7-8, Reply, p. 3.  The court does not find these differences persuasive.

11  Under West, the Supreme Court held that a private physician under contract with the state to

12  provide medical services to state prisoners "acted under color of state law for purposes of § 1983

13  when undertaking his duties" to treat the prisoner's injury.  West, 487 U.S. at 54, 108 S. Ct. at

14  2258.  This is so even though the physician provided his services per contract at a state prison

15  hospital on a part-time basis.  Id., at 56, 108 S. Ct. at 2259.  "Contracting out prison medical care

16  does not relieve the State of its constitutional duty to provide adequate medical treatment to those

17  in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth

18  Amendment rights."  Id.

19          There are four ways to identify when a private actor's conduct
        qualifies as state action for purposes of § 1983:(1) the private actor
20          performs a public function; (2) the private actor engages in joint
        activity with a state actor; (3) the private actor is subject to
21          governmental compulsion or coercion; or (4) there is a
        governmental nexus with the private actor. See *Gorenc v. Salt*
22          *River Project Agric Imp. and Power Dist.*, 869 F.2d 503, 507-08
        (9th Cir.1989); *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th
23          Cir.2003). "Under the public function test, when private
        individuals or groups are endowed by the State with powers or
24          functions governmental in nature, they become agencies or
        instrumentalities of the State and subject to its constitutional

25

26          [4] See First Amended Complaint, p. 4.

1    limitations." *Kirtley*, 326 F.3d at 1093 (citing *Lee v. Katz*, 276 F.3d
     550, 553-54 (9th Cir.2002) (internal quotation marks omitted)).
2    The public function test is satisfied only on a showing that the
     function at issue is "both traditionally and exclusively
3    governmental." *Id.*

4    A private physician or hospital that contracts with a public prison
     system to provide treatment for inmates performs a public function
5    and acts under color of law for purposes of § 1983. See *West v.
     Atkins*, 487 U.S. 42, 56 n. 15, 108 S.Ct. 2250, 101 L.Ed.2d 40
6    (1988) ( "[A]lthough the provision of medical services is a
     function traditionally performed by private individuals, the context
7    in which respondent performs these services for the State (quite
     apart from the source of remuneration) distinguishes the
8    relationship between respondent and West from the ordinary
     physician-patient relationship. Respondent carried out his duties at
9    the state prison within the prison hospital. That correctional setting,
     specifically designed to be removed from the community,
10   inevitably affects the exercise of professional judgment."); see also
     *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir.1991)
11   ("Here the district court's sua sponte dismissal was improper
     because Lopez's complaint alleges that defendants Maryvale
12   Samaritan Hospital ("Maryvale") and Southwest Ambulance
     Service ("Southwest") are under contract with the state of Arizona
13   to provide medical services to indigent citizens. These allegations
     are sufficient to support a section 1983 action because under either
14   the joint action or the government nexus analysis they set forth a
     claim that defendants Southwest and Maryvale act under color of
15   state law."); *Dixon v. Baptist South Medical Hospital*, 2010 WL
     431186, at *5 (M.D.Ala. Feb. 1, 2010) ("The law is well settled
16   that "a private physician ... under contract with a state to provide
     medical care to inmates 'acts under color of state law for purposes
17   of section 1983 when undertaking his duties' to treat an inmate." ...
     It likewise follows that a private hospital under contract with a
18   state to provide medical services to inmates acts under color of
     state law for § 1983 purposes.") (internal citations omitted); *Ayala
19   v. Andreasen*, 2007 WL 1395093, at *3 (E.D.Cal. May 10, 2007)
     ("His employer-Queen of the Valley Hospital-was under a contract
20   with state prison authorities for inmate referrals. As an agent of the
     hospital, defendant Klingman performed the catheter removal
21   surgery pursuant to that contract and a referral approved by state
     prison officials. There is nothing to meaningfully distinguish these
22   facts from *West*, where a private physician performed medical
     services under a contract to do so.").

23

24   George v. Sonoma County Sheriff's Dept.,732 F. Supp.2d 922, 933-34 (N.D. Cal. 2010).

25   It does not make any difference that the physician in *West*
     performed the services at the prison whereas plaintiff was treated at
26   an outside facility. What matters is that defendant Klingman

10

1

2
> performed medical services on an inmate and that he did so
> pursuant to a contract between the state prison system and his
> employer, Queen of the Valley Hospital. The court, therefore, finds

3
> that the factual allegations in the complaint are sufficient to
> establish that defendant Klingman acted under color of state law.

4   Ayala, supra, 2007 WL 1395093 * 3.

5           This is a question that cannot be resolved on a motion to dismiss.  In a motion for

6   summary judgment, defendant MH may be able to show that it had not contracted with CDCR to

7   provide medical services to prison inmates, or that if contracted in part, not for the services for

8   which plaintiff was initially sent to MH, or that there was some other justification for not having

9   provided further medical treatment for plaintiff.  However, taking plaintiff's allegations as true,

10  as the court must on this motion to dismiss, even though the claims with regard to whether or not

11  defendant MH is or was under a state contract could have been more definitively alleged, his

12  claim that defendant MH was under contract with the state to provide medical services for CDCR

13  CSPS prison inmates is sufficient to withstand a motion to dismiss contending plaintiff has not

14  shown MH to be a state actor within the meaning of § 1983.

15          Although defendant did not specifically address this question, the court also finds

16  *that at this stage*, plaintiff's assertion that he was told that MH does not operate on prisoners is

17  sufficient to allege a practice or policy by MH that subjected him to a constitutional violation.

18  Rodriguez v. Plymouth Ambulance Service, 577 F.3d 816, 822 (7th Cir. 2009) ("a private

19  corporation can be liable [under § 1983] if the injury alleged is the result of a policy or

20  practice...." ).[5]  The motion should be denied on the ground of plaintiff's having failed to frame a

21  claim under § 1983 against defendant MH.

22  \\\\\

23

24          [5]The undersigned is not finding that for Eighth Amendment purposes, private medical
    practitioners or entities must be skilled in every possible medical art at peril of Eighth
25  amendment liability.  For example, a practitioner or entity might not have appropriate resources
    to perform brain surgery or heart/lung transplants.  One would not be liable in such situations
26  simply because such services are not provided.

1    *3)       Whether Plaintiff has framed an Eighth Amendment Claim*

2                         Legal Standard for Eighth Amendment Claim

3             In order to state a § 1983 claim for violation of the Eighth Amendment based on

4    inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

5    deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

6    285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

7    serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

8    501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

9    1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

10   Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

11            A serious medical need exists if the failure to treat a prisoner's condition could

12   result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

13   that a prisoner has a serious need for medical treatment are the following:  the existence of an

14   injury that a reasonable doctor or patient would find important and worthy of comment or

15   treatment; the presence of a medical condition that significantly affects an individual's daily

16   activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

17   F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

18   (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

19   grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

20            In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

21   defined a very strict standard which a plaintiff must meet in order to establish "deliberate

22   indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

23   However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

24   which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

25   Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

26   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

A prison official acts with "deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks omitted).  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation omitted). FN4 This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Farmer, 511 U.S. at 839, 114 S.Ct. 1970. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." McGuckin, 974 F.2d at 1059 (alteration and citation omitted).

> FN4. In a recent case, we recognized that "deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir.2003) (citations omitted); see also Gibson, 290 F.3d at 1197 (acknowledging that a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the obvious and extreme nature of a detainee's abnormal behavior). []

Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

\\\\\

13

1    Additionally, mere delay in medical treatment without more is insufficient to state

2  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

3  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

4  no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

5  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

6  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

7  to provide additional support for a claim of deliberate indifference; however, it does not end the

8  inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

9  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

10  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

11  the defendant."  McGuckin, 974 F.2d at 1061.

12    Superimposed on these Eighth Amendment standards is the fact that in cases

13  involving complex medical issues where plaintiff contests the type of treatment he received,

14  expert opinion will almost always be necessary to establish the necessary level of deliberate

15  indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

16  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

17  treatment he received equated with deliberate indifference thereby creating a material issue of

18  fact, summary judgment should be entered for defendants.  The dispositive question will

19  ultimately be not what was the most appropriate course of treatment for plaintiff, but whether the

20  failure to timely give a certain type of treatment was, in essence, criminally reckless.

21    *Discussion*

22    Defendant MH's contention is that plaintiff has alleged nothing beyond a claim of

23  medical malpractice and amounts to a mere difference of opinion as to how to treat his broken

24  arm.  MTD, pp. 3-4, citing Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) ("[m]ere

25  negligence in the provision of medical care...does not constitute a constitutional violation")

26  (negligence insufficient for liability under the Eighth Amendment); Estelle v. Gamble, 429 U.S.

14

1    at 107-108, 97 S. Ct. 285 (a plaintiff has not shown deliberate indifference as a matter of law

2    when a defendant makes a medical judgment choosing one course of treatment over another);

3    Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970) (difference of opinion regarding medical

4    treatment between prisoner and prison medical authorities does not rise to the level of a claim

5    under § 1983).

6            In this instance, while defendant MH seeks dismissal of this claim as simply a

7    difference of opinion, plaintiff's allegation that, after taking x-rays and discerning that plaintiff

8    had suffered a complete fracture of his radius [or radial] bone, defendant did not provide him

9    with any treatment other than an ice pack and aspirin, subjecting him to a delay that caused him

10   severe pain.  On the face of it, this is not the type of medical injury that would appear to need the

11   services of an expert to show that more thorough and more immediate care was warranted.  It

12   appears to be a claim that meets the standard of deliberate indifference to a serious medical

13   condition, where defendant MH was aware that plaintiff had a broken arm and knew or should

14   have know that plaintiff was suffering significant pain from the accident. Plaintiff argues that

15   defendant MH subjected him to cruel and unusual punishment for "the failure to administer

16   effective pain medication" as the x-rays taken at MH showed he had a "total break to his left arm

17   at the radius bone" and for his obvious "substantial pain" he received only aspirin.  Opp., pp. 5-6.

18   The allegations of his second amended complaint plainly claim that he received only an ice pack

19   for the clear break.  Because inferences must be drawn in favor of plaintiff's allegations, the

20   court finds *at this stage* that plaintiff's allegations are adequate to frame an Eighth Amendment

21   claim against the defendant hospital.

22   Motion to Strike

23          *Legal Standard for Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)*

24          Fed.R.Civ.P. 12(f) provides that "redundant, immaterial,
            impertinent, or scandalous matters" may be "stricken from any
25          pleading." Fed.R.Civ.P. 12(f). "[O]nly pleadings are subject to
            motions to strike." *See* Sidney-Vinstein v. A.H. Robins Co., 697
26          F.2d 880, 885 (9th Cir.1983).

1

2

3

4

5

> Motions to strike are disfavored and infrequently granted. See
> *Pease & Curren Ref., Inc. v. Spectrolab, Inc.*, 744 F.Supp. 945,
> 947 (C.D.Cal.1990), abrogated on other grounds by *Stanton Road
> Associates v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir.1993).
> "[M]otions to strike should not be granted unless it is clear that the
> matter to be stricken could have no possible bearing on the subject
> matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758
> F.Supp. 1335, 1339 (N.D.Cal.1991) (citation omitted).

6   Neveu v. City of Fresno, 392 F. Supp.2d 1159, 1170 (E.D. Cal. 2005).

7   *Discussion*

8   Defendant MH moves to strike, pursuant to Fed. R. Civ. P. 12(f), as "redundant,

9   immaterial, and impertinent," plaintiff's request for relief in the form of punitive damages. See

10  Motion to Strike (Supporting Memorandum)(MTS), pp. 1-2.  Defendant contends that the request

11  for punitive damages is based on "insufficient conclusions of law without any facts" that justifies

12  any such relief.  Id., at 2.  In his prayer for compensatory and punitive damages "according to

13  statute," defendant MH argues, plaintiff does not identify the statute which allows for punitive

14  damages or to whom the request for punitive damages is directed.  Id.  Defendant contends that

15  plaintiff does not allege that any individual acted with malice, oppression or fraud or that

16  defendant MH's management authorized or ratified malicious conduct.[6]  Id., at 3.  Defendant

17  cites Fed. R. Civ. P. 9(b), which permits "[m]alice, intent, knowledge, and other conditions of a

18  person's mind" to be "alleged generally."  Id.  Smith v. Wade, cited by defendant, holds that a

19  jury may assess punitive damages in a § 1983 action:

20
21
22

> when the defendant's conduct is shown to be motivated by evil
> motive or intent, or when it involves reckless or callous
> indifference to the federally protected rights of others. We further
> hold that this threshold applies even when the underlying standard
> of liability for compensatory damages is one of recklessness.

23  Smith v. Wade, 461 U.S. 30, 56, 103 S. Ct. 1625 (1983).

24  \\\\\

25

26  [6] The court will not re-visit defendant's contention that plaintiff has not alleged that
defendant MH acted under color of law.

16

1           Defendant argues that <u>Neveu v. City of Fresno</u>, 392 F. Supp.2d 1159, articulates a

2    standard for seeking punitive damages under § 1983 that places a limit on "the general rule of

3    relaxed pleading for malice ... in the 1983 context."  MTS, pp. 4-5.  However, in <u>Neveu</u>, the

4    court does nothing that expands the standard set forth in <u>Smith v. Wade</u>, <u>supra</u>.  While striking

5    the claim for punitive damages against a public entity under § 1983 as a matter of law, citing,

6    <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271, 101 S.Ct. 2748, [] (1981), the court

7    found plaintiff's allegations against the individual defendants "sufficient to infer malice," citing

8    Fed. R. Civ. P. 9(b).   <u>Neveu v. City of Fresno</u>, 392 F. Supp.2d at 1183.

9           In opposition, plaintiff cites the Ninth Circuit Model Jury Instructions for the

10   standard for awarding punitive damages, arguing that he must only prove by a preponderance of

11   the evidence that "defendant's conduct was malicious, or in reckless disregard of plaintiff's

12   rights."  Opposition (Opp.), p. 2.

13          Actually, Ninth Circuit Model Jury Instruction 5.5 states, in relevant part:

14-15
> The plaintiff has the burden of proving by [a preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded, and, if so, the amount of any such damages.

16-22
> You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff."

24   Plaintiff cites <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559, 116 S. Ct. 1589 (1996), and

25   <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 111 S. Ct. 1032 (1991), as support for his

26   argument for entitlement to punitive damages.  Plaintiff contends that his allegations against

1   defendant MH show that it acted recklessly and callously so as to warrant an award of punitive

2   damages.  See Opposition (Opp.), p. 3.

3          Defendant takes issue with plaintiff's reliance on BMW of North America

4   (involving a claim of fraud by a car purchaser against an automobile manufacturer) and Pacific

5   Mutual Life Ins. (concerning an action for fraud against an insurer) because, as defendant asserts,

6   these cases have nothing to do with a cause of action under § 1983.  Reply, pp. 3-4.  Defendant

7   contends that none of the facts pled show plaintiff was subjected to a reckless disregard of

8   plaintiff's rights.  Id., at 4.

9          As noted above, motions to strike under Fed. R. Civ. 12(f) are disfavored and

10  "should not be granted unless it is clear that the matter to be stricken could have no possible

11  bearing on the subject matter of the litigation."   Neveu, supra,  citing Colaprico v. Sun

12  Microsystems, Inc., 758 F.Supp. at 1339.  "Punitive damages serve to punish the defendant for

13  wrongful conduct and to deter the defendant and others from repeating that wrong."  Dang v.

14  Cross, 422 F.3d 800, 810 (9th Cir. 2005).  "It is well established that a 'jury may award punitive

15  damages under section 1983 either when a defendant's conduct was driven by evil motive or

16  intent, or when it involved a reckless or callous indifference to the constitutional rights of

17  others.'" Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir. 2003) (internal citations omitted).

18  The court does not find, as a matter of law, *at this stage of the litigation* that plaintiff's

19  allegations against defendant MH could not give rise to an inference of reckless disregard of his

20  rights under the Eighth Amendment.  The motion to strike is denied.

21          Accordingly, IT IS ORDERED that:

22          1.  The Clerk of the Court is directed to correct the name of defendant Mercy

23  Folsom Hospital to defendant Mercy Hospital of Folsom in the docket of this case;

24          2.  Defendant Mercy Hospital of Folsom's motion to strike plaintiff's claim for

25  punitive damages, filed on January 3, 2012 (docket # 46), is denied.

26  \\\\\

1    IT IS RECOMMENDED that defendant Mercy Hospital of Folsom's motion to

2  dismiss, filed on January 3, 2012 (docket # 43), be denied, and this defendant be ordered to file

3  an answer within twenty-one days of adoption of these findings and recommendations, should

4  that occur.

5    These findings and recommendations are submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

7  days after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within fourteen days after service of the objections.  The parties are

11  advised that failure to file objections within the specified time may waive the right to appeal the

12  District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: July 31, 2012

14

15                    /s/ Gregory G. Hollows
              UNITED STATES MAGISTRATE JUDGE

16  GGH:009
   lew2120.mtd+

17

18

19

20

21

22

23

24

25

26

19