1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11   MARCUS LARRY CLEWIS,

12            Plaintiff,              No. 2:09-cv-2120 JAM AC P

13        vs.

14   CALIFORNIA PRISON HEALTH
     CARE SERVICES, et al.,

15            Defendants.            FINDINGS AND RECOMMENDATIONS

16   _____/

17        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.

18   This matter proceeds against defendant Mercy Hospital of Folsom ("Mercy") only.[1]  The second

19   amended complaint (ECF No. 34)  alleges that plaintiff received constitutionally deficient

20   medical care at Mercy following a broken arm.

21        Pending before the court is Mercy's fully briefed motion for summary judgment (ECF

22   No. 66).  Defendant seeks summary judgment or, in the alternative, summary adjudication, on

23   grounds that: (1) Mercy is not liable under 42 U.S.C. § 1983 because it was not a state actor

24   within the meaning of the statute; (2) there is no genuine issue of material fact because Mercy's

25

26        [1]  Plaintiff previously stipulated with defendants Asp, Sahota and Jeu to their voluntary
     dismissal with prejudice.  ECF No. 76.

1

1  actions do not amount to "deliberate indifference" as a matter of law; (3) Mercy adhered to the

2  Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, et seq.; and (4) there

3  is no triable issue of fact with regard to plaintiff's request for punitive damages because Mercy

4  satisfied the applicable medical standard of care at all times.

5       Mercy's motion to dismiss for failure to state a claim (ECF No. 43) was previously

6  denied.  See ECF Nos. 62 (Findings and Recommendations), 71(Order).  The court found that

7  plaintiff's allegations were sufficient *at the pleading stage* to state an Eighth Amendment claim

8  against Mercy.  ECF No. 62 at 11,15 (emphases in original).  The questions whether a

9  contractual relationship existed between Mercy and the prison such that Mercy was acting under

10 color of state law, and whether Mercy had a policy of refusing to provide certain services to

11 prisoner-patients, were found incapable of resolution on the pleadings.  Id.  Mercy was invited

12 to renew its arguments in a summary judgment motion, which it did even before the district court

13 adopted the Findings and Recommendations on the motion to dismiss.  ECF Nos. 66 (MSJ filed

14 September 7, 2012), 71 (Order adopting F&Rs, filed September 11, 2012).

15          LEGAL STANDARDS FOR SUMMARY JUDGMENT (RULE 56)

16      Summary judgment is appropriate when it is demonstrated that there exists "no

17 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

18 law." Fed. R. Civ. P. 56(a).

19         Under summary judgment practice, the moving party

20       always bears the initial responsibility of informing the district
      court of the basis for its motion, and identifying those portions of

21       "the pleadings, depositions, answers to interrogatories, and
      admissions on file, together with the affidavits, if any," which it

22       believes demonstrate the absence of a genuine issue of material
      fact.

23

24 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

25 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

26 judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

1  answers to interrogatories, and admissions on file.'" Id. at 324.   Indeed, summary judgment

2  should be entered, after adequate time for discovery and upon motion, against a party who fails

3  to make a showing sufficient to establish the existence of an element essential to that party's

4  case, and on which that party will bear the burden of proof at trial.   See id. at 322.   "[A] complete

5  failure of proof concerning an essential element of the nonmoving party's case necessarily

6  renders all other facts immaterial."   Id. at 323.   In such a circumstance, summary judgment

7  should be granted, "so long as whatever is before the district court demonstrates that the standard

8  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."   Id.

9       If the moving party meets its initial responsibility, the burden then shifts to the opposing

10  party to establish that a genuine issue as to any material fact actually does exist.   See Matsushita

11  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   In attempting to establish the

12  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

13  of its pleadings but is required to tender evidence of specific facts in the form of affidavits,

14  and/or admissible discovery material, in support of its contention that the dispute exists.   See

15  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.   The opposing party must demonstrate

16  that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under

17  the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.

18  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

19  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

20  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

21       In the endeavor to establish the existence of a factual dispute, the opposing party need not

22  establish a material issue of fact conclusively in its favor.   It is sufficient that "the claimed

23  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

24  truth at trial."   T.W. Elec. Serv., 809 F.2d at 631.   Thus, the "purpose of summary judgment is to

25  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

26  trial.'"   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on

1    1963 amendments).

2          In resolving the summary judgment motion, the court examines the pleadings,

3    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4    any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

5    477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

6    court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

7    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

8    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

9    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

10   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

11   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

12   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

13   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).[2]

14                                          FACTS

15         The following facts are undisputed: Plaintiff injured his left arm sliding into a base

16   during a baseball game with other inmates on May 26, 2008 at California State Prison –

17   Sacramento (CSPS).  It was Memorial Day.  Plaintiff went to the prison medical clinic and was

18   later transported from CSPS to Mercy, arriving at the Emergency Department at about 3:40 p.m.

19   He was triaged, then taken to a room in the Emergency Dept. at 3:45 p.m.   Plaintiff's left arm

20   was x-rayed, and a broken left radial bone was identified.  Plaintiff was examined and treated at

21   Mercy by Dr. Reinke.  Plaintiff was transported back to CSPS on May 26, 2008 at 5:55 p.m. with

22   instructions to see a prison doctor the following day.  On May 27, 2008, plaintiff was transported

23

24         [2] On August 30, 2010 (ECF No. 20), and again on December 12, 2011 (ECF No. 40), the
     court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the
     Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en
25   banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).  Thereafter, on September
     7, 2012 (ECF No. 66 at 2-3), defendant provided plaintiff the contemporaneous notice required
26   by Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).

by ambulance to UCDMC, where he had surgery on his arm on May 28, 2008.

The complaint alleges that while at Mercy, plaintiff was provided only an ice pack and aspirin.  ECF No. 34, ¶ 12.  In opposition to summary judgment, however, plaintiff does not dispute the accuracy of medical records produced by defendants  documenting that he was evaluated several times in the Emergency department by a physician and by nursing staff, his abrasions were cleaned and dressed, his broken arm was splinted, he was administered Dilaudid for pain and Compazine for any nausea caused by the pain medication, and was discharged with a prescription for Vicodin.  See ECF No. 68 at 3-6 (Defendant's Statement of Undisputed Facts), and exhibits cited therein.  Plaintiff does continue to maintain that his treatment was inadequate and that Mercy should either have performed the necessary surgery or had plaintiff transported to UCDMC for the surgery rather than returning him to the prison.

Defendant has produced the declaration of Robert E. Buscho, M.D., who is Board-certified in emergency medicine and licensed to practice in California since 1975, who opines that the treatment provided at Mercy was consistent with the applicable medical standard of care.  Dr. Buscho declares among other things that plaintiff's fracture did not require immediate surgery, and that an open reduction and fixation of the fractured bone could properly be done three or four days after the injury.  ECF No. 69-4 (Buscho Decl.) at 4.  In opposition to summary judgment plaintiff does not address the substance of Dr. Buscho's declaration or offer contrary medical evidence.  Plaintiff relies entirely on an x-ray image of his left arm as surgically repaired at UCDMC, and argues that the break was "obviously" more than "minimally displaced" (as described by Drs. Reinke and Buscho) and required immediate surgery or transport for surgery.

## ELEMENTS OF AN EIGHTH AMENDMENT VIOLATION

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that

5

1  defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299

2  (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of

3  mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5

4  (1992).

5      A serious medical need exists if the failure to treat a prisoner's condition could result in

6  further significant injury or the unnecessary and wanton infliction of pain.  Indications that a

7  prisoner has a serious need for medical treatment are the following: the existence of an injury

8  that a reasonable doctor or patient would find important and worthy of comment or treatment;

9  the presence of a medical condition that significantly affects an individual's daily activities; or

10 the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332,

11 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir.

12 1989); McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds,

13 WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

14     In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

15 demanding standard for "deliberate indifference."  Negligence is insufficient.  Farmer, 511 U.S.

16 at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

17 which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

18 violation.  Id. at 836-37.  It not enough that a reasonable person would have known of the risk or

19 that a defendant should have known of the risk.  Id. at 842.  Rather, deliberate indifference is

20 established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to

21 inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal

22 citation omitted) (emphasis added).

23     A physician need not fail to treat an inmate altogether in order to violate that inmate's

24 Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A

25 failure to *competently* treat a serious medical condition, even if some treatment is prescribed,

26 may constitute deliberate indifference in a particular case.  Id.      However, mere differences of

1    opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment

2    violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337,

3    1344 (9th Cir. 1981).  In cases involving complex medical issues where plaintiff contests the

4    type of treatment he received, expert opinion will almost always be necessary to establish the

5    necessary level of deliberate indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir.

6    1988).

7         A finding that an inmate was seriously harmed by the defendant's action or inaction tends

8    to provide additional support for a claim of deliberate indifference; however, it does not end the

9    inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

10   medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

11   needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

12   the defendant."  McGuckin, 974 F.2d at 1061.

13                                     ANALYSIS

14        *Mercy as a State Actor*

15        Mercy seeks summary judgment on grounds that it is not a state actor and therefore

16   cannot be liable under §1983.  In general, private parties do not act under color of state law and

17   therefore do not come within the reach of the statute.  Price v. Hawaii, 939 F.2d 702, 707-08 (9th

18   Cir. 1991), cert. denied, 503 U.S. 938 (1992).  The action of an ostensibly private entity or

19   individual "may be treated as the government's action 'if, though only if, there is such a close

20   nexus between the State and the challenged action that seemingly private behavior may be fairly

21   treated as that of the State itself.'"  West v. Atkins, 487 U.S. 42, 48 (1988) (quoting Brentwood

22   Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288, 295 (2001).[3]  This is a

23

24        [3]  The predominant tests used to identify state action in the §1983 context are:  "(1)
25   public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental
     nexus."  Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003).  The four tests are not entirely
     discrete.  All provide slightly different ways to answer the same fundamental question: whether
26   the defendant has "exercised power 'possessed by virtue of state law and made possible only

question of fact.  <u>Howerton v. Gabica</u>, 708 F.2d 380, 382 (9th Cir. 1983).  The requisite nexus

exists, for example, where a private physician works under contract at a state-prison hospital on

a part time basis.  <u>West</u>, 487 U.S. at 56.  It has also been recognized where a hospital and

ambulance service are under contract with the state to provide medical services to indigent

citizens.  <u>Lopez v. Dept. of Health Servs.</u>, 939 F.2d 881, 883 (9th Cir. 1991).  It does not exist

where, as here, a health care provider not contracted to the state has a preexisting commitment to

serve all persons who present themselves for emergency treatment.  <u>Rodriguez v. Plymouth</u>

<u>Ambulance Service</u>,  577 F.3d 816, 827 (7th Cir. 2009).

In <u>West</u>, the Supreme Court held that prison doctors act under color of state law no less

when they work under a contract than when they are correctional employees.  487 U.S. at 55-56.

The form of the relationship is not dispositive, because in both cases the doctors are hired by the

state to perform a state function, and do so under the influence of the state.

> It is the physician's function within the state system, not the
> precise terms of his employment, that determines whether his
> actions can fairly be attributed to the state.  Whether a physician is
> on the state payroll or is paid by contract, the dispositive issue
> concerns the relationship among the State, the physician, and the
> prisoner. . . .
>
> It is the physician's function while working for the State, not the
> amount of time he spends in performance of those duties or the fact
> that he may be employed by others to perform similar duties, that
> determines whether he is acting under color of state law.

<u>West</u>, 487 U.S. at 56.

Plaintiff contends that Mercy is subject to § 1983 liability as "a medical entity under

contract by the California Department of Corrections and Rehabilitation."  ECF No. 34 at ¶ 8.[4]

---

because the wrongdoer is clothed with the authority of state law.'"  <u>West</u>, 487 U.S. at 49
(quoting <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941)).

[4]  As defendant points out, the first amended complaint alleged that Mercy had refused to
treat plaintiff on grounds that it did *not* have a contract with the state.  <u>See</u> ECF No. 15 at 4.  The
second amended complaint superseded the first.  <u>See</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896,
927 (9th Cir. 2012) ("the general rule is that an amended complaint super[s]edes the original

1  Defendants have submitted the declaration of April Martin, Director of Managed Care for

2  Dignity Health (Mercy's parent non-profit corporation), who attests that there was no contract

3  between CDCR and Mercy Folsom Hospital during May of 2008.  ECF No. 69-13.  The

4  declaration of  Kathleen Watrobski, Mercy's Risk Management Program Manger and member of

5  the institution's Policy and Procedures Committee, attests that Mercy had no policy or practice

6  of permitting CDCR to have any influence over the medical care provided to inmates at Mercy.

7  ECF No. 69-9.  These declarations meet defendants' initial responsibility under Rule 56 to

8  demonstrate the absence of an essential element of plaintiff's case.

9      Plaintiff attempts to create a factual dispute by presenting part of a contract between

10  CDCR and Mercy Folsom Hospital that was obtained in discovery by another prisoner in another

11  lawsuit involving a different time period.  ECF No. 72 at 2, 13-18 (document filed in EDCA

12  Case No. 2:04-cv-01108 GEB JFM).  Given the case number, that case necessarily involved

13  events occurring no later than 2004.[5]  Accordingly, the exhibit is not probative of the existence

14  of a contract in force in May of 2008.  Plaintiff points to no facts indicating that this contract or

15  any other was in force at the time he was treated at Mercy.

16      Plaintiff also emphasizes that the prison was the "guarantor" for payment of services

17  rendered to him at Mercy.  ECF No. 72 at 4, 22 (emergency department registration form).  The

18  guarantor/provider relationship is limited by definition to financial responsibility for a single

19  emergency room visit, and does not create or reflect an ongoing "relationship among the State,

20  the physician [or hospital], and the prisoner."  West, 487 U.S. at 56.  Indeed, the fact that the

21  prison acted as guarantor in a discrete fee-for-service context supports an inference that there

22

23  ─────────────────

24  complaint and renders it without legal effect... .") Because it is proper when amending to correct
    errors of fact and/or pleading, the court denies defendant's request to take judicial notice of the
    previous allegation and to construe the factual inconsistency adversely to plaintiff.

25

26      [5]  The case file of Case No. 2:04-cv-01108 GEB JFM, of which the undersigned takes
    judicial notice, reflects that the case involved events in 2003.

1    was no ongoing contract that covered services to CSPS inmates.[6]

2           Plaintiff's exhibits do not establish the existence of a contract or demonstrate the

3    existence of a material factual dispute regarding state action.[7]  On the present record, nothing

4    indicates that either Dr. Reinke or Mercy had an ongoing contractual or employment relationship

5    with the state, or an ongoing provider-patient relationship with the prisoner.  See West, 487 U.S.

6    at 56 (dispositive issue is relationship between the state, the provider, and the prisoner).  It is

7    clear that neither Dr. Reinke nor Mercy functioned, or provided the services at issue here,

8    "within the state [correctional] system."[8]  Id.  Neither Dr. Reinke nor Mercy worked "for the

9    State," id., either in general or on May 26, 2008.  The factors that were dispositive in West are

10   absent here.

11          The undersigned agrees with the Seventh Circuit's conclusion that, under West, private

12   organizations having "only an incidental and transitory relationship with the state's penal system

13   usually cannot be said to have accepted, voluntarily, the responsibility of acting for the state and

14   assuming the state's responsibility for incarcerated persons."  Rodriguez,  577 F.3d at 827.  As

15   the Rodriguez court explained:

16                  [A]n emergency medical system that has a preexisting obligation
                    to serve all persons who present themselves for emergency
17                  treatment hardly can be said to have entered into a specific
                    voluntary undertaking to assume the state's special responsibility
18                  to incarcerated persons. . . .  Rather, it has undertaken to provide a

19   ───────────────────

20          [6] Plaintiff also presents his correspondence with counsel for Mercy, in an attempt to
     suggest that the state had a contract with Mercy to pay its legal costs.  The exhibits do not
     support plaintiff's position.
21
            [7] Defendant objects to plaintiff's exhibits as unauthenticated and lacking foundation.
22   Because plaintiff is in pro per and the exhibits are of a type that could be properly authenticated
     at trial, the objections are overruled.  See Fraser v. Goodale, 342 F.3d 1032, 1036 ( 9th Cir.
23   2003) (evidence which could be made admissible at trial may be considered on summary
     judgment), cert. denied, 541 U.S. 937 (2004).
24
            [8] Although the West analysis focuses on function and the relationship between the
25   provider and the prison, setting is a relevant factor.  West, 487 U.S at 56-57 n.15 (emphasizing
     that prison doctors provide services in a correctional setting removed from the community and
26   subject to correctional imperatives).

1    specific service, emergency medical care, to all who need those
     services.  The fact that it does not, and cannot, discriminate against
2    incarcerated individuals does not mean that it has agreed to step
     into the shoes of the state and assume the state's responsibility
3    toward these persons. It has not "'assume[d] an obligation to the
     [penological] mission that the State, through the [prison], attempts
4    to achieve.' "

5    Id. at 827-28 (quoting West, 487 U.S. at 51).

6          Like the hospital at issue in Rodriguez and unlike the doctor in West, Mercy offered

7    emergency services to the general public.  The fact that the community it serves includes a

8    prison, and that plaintiff was brought to its emergency room, does not in the absence of a

9    contract or other evidence of an ongoing obligation to treat prisoners *qua* prisoners bring this

10   case within the ambit of West.  Defendant is therefore entitled to summary judgment on grounds

11   that it did not act under color of state law when it provided emergency services to plaintiff.

12
     *Plaintiff Has Failed To Demonstrate The Existence Of A Material Factual Dispute*
13   *Regarding Deliberate Indifference*

14         Even if it were a state actor, Mercy would be liable only for its own actions.  The hospital

15   cannot be vicariously liable for the actions of Dr. Reinke.  See Ashcroft v. Iqbal, 129 S. Ct.

16   1937, 1948 (2009) (vicarious liability and respondeat superior theories inapplicable in § 1983

17   context).  Like a municipality, a private entity can be liable under § 1983 only if its policy or

18   custom caused the constitutional violation.  See Robinson v. City of San Bernardino Police

19   Dep't, 992 F.Supp. 1198, 1204 (C.D. Cal. 1998).

20         Plaintiff has not identified or shown any policy, custom or practice of Mercy's that

21   caused his discharge "to home" prior to surgery on his arm.  Plaintiff survived a Rule  12(b)(6)

22   challenge on this issue because he had alleged that (1) "Defendant Hospital" told him that "it

23   [did] not operate on prisoners," and (2) that "Defendant Hospital" returned plaintiff to the prison

24   rather than ensuring he was transported to UCDMC for surgery.  See ECF No. 34 (Second

25   Amended Complaint) at ¶ 12; ECF No. 62 (Findings and Recommendations on motion to

26   dismiss) at 11.  In the summary judgment context, however,  plaintiff has provided no facts to

1   support the existence of a policy or custom to refuse treatment to inmates requiring surgery, or to

2   discharge inmates regardless of medical need.  Bare allegations, formulated at a high level of

3   generality, are insufficient to meet plaintiff's burden on summary judgment.  Because plaintiff

4   does not have personal knowledge of Mercy's policies and practices, the allegations of his

5   verified complaint do not create a factual dispute.  See McElyea v. Babbitt, 833 F.2d 196, 197-

6   98 ( 9th Cir. 1987) (verified complaint of pro se prisoner, based on personal knowledge, satisfies

7   affidavit requirement of Celotex).

8       Defendant has tendered the declaration of Kathleen Watrobski, Mercy's Risk

9   Management Program Manger and member of the institution's Policy and Procedures

10  Committee.  ECF No. 69-9.  Ms. Watrobski declares that the hospital does not and did not in

11  May 2008 have a policy to withhold treatment to prisoners.  Plaintiff does not dispute the

12  declaration with evidence.  Plaintiff's failure of proof regarding the existence of an

13  unconstitutional policy provides independent grounds for summary judgment in defendants'

14  favor.

15      Moreover, even if Mercy were responsible under § 1983 for all treatment provided at its

16  facility, or if it did have a policy that required the discharge,[9] defendants would be entitled to

17  summary judgment because plaintiff has failed to demonstrate the existence of a triable factual

18  dispute regarding deliberate indifference.  Plaintiff survived the Rule 12(b)(6) motion on this

19  question because the court was constrained to accept as true the allegation of the complaint that

20

21      [9]  Mercy contends that it cannot be liable for the acts or omissions of Dr. Reinke because
22  he was an independent professional and not an employee or agent of Mercy.  Defendant has
    produced the "Emergency Information and Consent to Treatment" form signed by plaintiff on
23  May 26, 2008, which explains that Mercy physicians are independent practitioners who utilize
    the hospital's facilities and staff, but not employees, representatives or agents of Mercy.  ECF
24  No. 69-3 at 5-6.  Even if Dr. Reinke had been an employee, Mercy would not be vicariously
    liable.  Iqbal, 129 S. Ct. at 1948.  The fact that, pursuant to the legal relationship between Mercy
25  and its physicians, the hospital and its staff follow the instructions of physicians rather than the
    other way around, ECF No. 69-3 at 5 (consent form), ECF No. 69-10 (Misakian Decl.)  at ¶ 5,
26  does undercut any theory that Dr. Reinke's decision to discharge plaintiff was the product of a
    Mercy policy.

1   the only treatment he received at Mercy was "an ice pack and aspirin."  See ECF No. 62

2   (Findings and Recommendations) at 15.  In support of summary judgment, defendant has

3   provided documentation of the treatment that plaintiff received, which included the cleaning and

4   dressing of his abrasions, splinting of his broken arm, administration of Dilaudid for pain and

5   Compazine for nausea, and a prescription for Vicodin for pain management after discharge.

6   Plaintiff does not contest the accuracy of these records.  Rather, he relies on his own belief that

7   nothing short of immediate surgery or transport for surgery was sufficient.

8           Plaintiff's own disagreement with the treatment that he received is insufficient as a

9   matter of law to establish an Eighth Amendment violation.  See Toguchi, 391 F.3d at 1058.

10  Plaintiff's objection to the characterization of his injury as a "minimally displaced fracture" is

11  also unavailing, as "minimally displaced" is a medical term of art.  Plaintiff is unqualified to

12  dispute a medical diagnosis.  X-rays of surgically fixed bones are undeniably dramatic, but lay

13  people are in no position to judge from such an X-ray whether earlier surgery was medically

14  necessary, whether surgery could safely be delayed, or whether conditions including swelling of

15  the affected limb indicated that surgery should be delayed in the patient's medical interest.  The

16  only evidence before the court on those questions is the opinion of Dr. Buscho, who opines that

17  Dr. Reinke provided appropriate treatment.

18          The undersigned appreciates that a prisoner in pro per may not have access to an expert

19  witness in order to provide a contrary affidavit.  However, plaintiff has not produced any

20  reasonably available documentary evidence (such as medical records from UCDMC or CSPS)

21  that raises a factual dispute over the propriety of the two-day delay between his injury and his

22  surgery at UCDMC, or the medical reasonableness of his discharge "home" to the prison in the

23  interim.  Even a medically unreasonable decision, of course, is insufficient without more to

24  support Eighth Amendment liability.  Estelle, 429 U.S. at 106 ("Medical malpractice does not

25  become a constitutional violation merely because the victim is a prisoner.").

26          In Jett v. Penner, 439 F.3d 1091 (9th Cir. 2006), the Ninth Circuit reversed a grant of

13

1   summary judgment to defendants in a case arising from the failure to surgically set an inmate's

2   broken thumb.  In Jett, CSPS prison doctors failed to ensure that plaintiff saw an orthopedist to

3   set and cast his thumb as directed by the initial physician's aftercare instructions.  As in the

4   instant case, the plaintiff in Jett was taken to Mercy Hospital Folsom after his accident, where his

5   fracture was identified and he was discharged with the expectation of further treatment

6   elsewhere.  Despite instructions that he be seen by an orthopedist within the week, the plaintiff

7   was not seen by a prison doctor *at all* for two months, and did not see an appropriate specialist

8   at UCDMC for surgical evaluation until *nineteen months* after the injury.  Jett is an extreme case,

9   and certainly does not represent the minimum showing necessary for an Eighth Amendment

10  violation.  It nonetheless provides an instructive contrast to the instant case.  Here, plaintiff's

11  fracture was identified at Mercy and prompt follow-up was recommended; plaintiff was then

12  seen by a prison doctor the next day and transported to UCDMC, where received the necessary

13  surgery two days after his injury.

14          The Jett case did not involve a claim against Mercy or the doctor at Mercy whose

15  instructions were ignored; the issue there was the deliberate indifference of prison doctors given

16  their knowledge of plaintiff's injury and the Mercy physician's recommendation that he see a

17  specialist promptly.  The Court of Appeal held that summary judgment had been improperly

18  granted because the record included evidence that the CSPS defendants were aware of plaintiff's

19  aftercare instructions, his many grievances and letters demanding care, and medical slips

20  complaining of severe pain, from which a trier of fact could conclude that they were deliberately

21  indifferent to his serious medical need.  Id. at 1097, 1098.  On the facts of that case, summary

22  judgment was inappropriate because there was a triable issue of fact regarding defendants'

23  deliberately indifferent state of mind at the time of the acts and omissions at issue.

24          In this case, there is no evidence from which a trier of fact could conclude that Mercy, or

25  any individual associated with Mercy, discharged plaintiff with knowledge that the discharge

26  presented a serious risk of delayed surgery that would cause him further harm or unnecessary

1    suffering.  Nor, as explained above, has plaintiff produced factual material probative of a Mercy

2    policy or practice that compelled unconstitutional care.  Because there is a complete failure of

3    proof on an essential element of plaintiff's Eighth Amendment claim, any other factual disputes

4    are immaterial and defendant is entitled to summary judgment.  See Celotex, 477 U.S. at 23.

5                    *Other Grounds Presented For Summary Judgment*

6            Defendant seeks summary judgment on grounds that it adhered to the  Emergency

7    Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.  EMTALA,

8    commonly referred to as the "Patient Anti-Dumping Act," imposes standards for emergency

9    medical screening and transfers on hospitals that participate in the Medicare program and

10   operate emergency rooms.  Bryant v. Adventist Health System/West, 289 F.3d 1162, 1163 (9th

11   Cir. 2002).  "Congress enacted EMTALA to ensure that individuals, regardless of their ability to

12   pay, receive adequate emergency medical care."  Id. at 1165 (citing Jackson v. East Bay Hosp.,

13   246 F.3d 1248, 1254 (9th Cir.2001)).  The Act was devised to address Congress's "concern[] that

14   hospitals were 'dumping' patients who were unable to pay, by either refusing to provide

15   emergency medical treatment or transferring patients before their conditions were stabilized."

16   Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1255 (9th Cir.1995).

17           The second amended complaint does not state a claim for relief under the EMTALA.

18   Although plaintiff sought discovery regarding Mercy's compliance with the EMTALA, and his

19   briefing on the summary judgment motion reflects the (unsupported) theory that violations of the

20   EMTALA establish Eighth Amendment liability, defendant is entitled to summary judgment on

21   the constitutional claim for the reasons explained above.  Any factual disputes regarding

22   compliance with the statute are therefore immaterial.

23           Mercy also seeks summary judgment on plaintiff's request for punitive damages, on

24   grounds that it met the applicable standard of care at all times.  Because summary judgment is

25   appropriate on the Eighth Amendment claim for the reasons previously explained, the punitive

26   damages issue is moot.  Mercy's invitation to summarily adjudicate its compliance with the

1  EMTALA and applicable standard of care should be declined as unnecessary to decide the

2  motion.

3  <u>CONCLUSION</u>

4  Accordingly, IT IS RECOMMENDED that defendant Mercy Hospital of Folsom's

5  motion for summary judgment (ECF No. 66)  be granted for the reasons stated, and judgment be

6  entered for defendant.

7  These findings and recommendations are submitted to the United States District Judge

8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one

9  days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within fourteen days after service of the objections.  The parties are

13  advised that failure to file objections within the specified time may waive the right to appeal the

14  District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15  DATED: June 10, 2013

16

17  _____
    ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

18

19  AC:009
    clew2120.msj

20

21

22

23

24

25

26

16